UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.

**VICTOR ARIZA**,

    Plaintiff,

vs.

**BIGFOOT AXE THROWERS LLC,**
**a Florida limited liability company,**

    Defendant.
_____/

## COMPLAINT

Plaintiff VICTOR ARIZA, through undersigned counsel, sues Defendant BIGFOOT AXE THROWERS LLC, a Florida limited liability company, and alleges as follows:

1. This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3. Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Middle District of Florida.

4. Plaintiff VICTOR ARIZA is a resident of Miami-Dade County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). Although Plaintiff resides in Miami-Dade County, Florida, he frequently travels to

and stays with friends in the Orlando, Florida area, specifically at 4143 Flying Fortress Avenue, Kissimmee, Florida, and at other times stays at the Econolodge in Kissimmee, Florida. His most recent trip to the Orlando area was in mid-February 2024, and he intends to continue to regularly revisit the area, including making trips as early as April 2024.

5. Plaintiff is and at all relevant times has been blind and visually disabled in that he suffers from optical nerve atrophy, a permanent eye and medical condition that substantially and significantly impairs his vision and limits his ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6. Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow

2

symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

7. Defendant is a Florida limited liability company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a place of recreation offering axe throwing and "rage room" activities, located at 3262 Vineland Road, Suite 107, Kissimmee, Florida, which Plaintiff intended to patronize in the near future as early as April 2024..

8. Plaintiff's blindness limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9. Plaintiff frequently accesses the internet. Because he is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10. At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a place of recreation under the name "Bigfoot Axe Throwers and Rage Room".  The "Bigfoot Axe Throwers and Rage Room" physical location is a place of recreation open to the public. As the owner, operator, and/or controller of this place of recreation, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant

is a private entity which owns, operates, and/or controls "a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation," per 42 U.S.C. §12181(7)(L) and 28 C.F.R. §36.104(12).

11. Because Defendant is a place of recreation that is open to the public, it is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7) (L), and its implementing regulations, 28 C.F.R. Part 36.

12. Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.bigfootaxethrowers.com (the "Website"). One of the functions of the Website is to provide the public information on the physical location of Defendant's place of recreation. Defendant also sells to the public its axe throwing and rage room activities through the Website, which acts as a critical point of sale and booking reservations for Defendant's axe throwing and rage room activities that are also available for booking and purchase in, from, and through Defendant's physical place of recreation. In addition, the Website allows users to submit an electronic contact form to get in contact with and be contacted by the physical place of recreation.

13. The Website also services Defendant's physical place of recreation by providing information on available services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14. Because the Website allows the public the ability to secure information about the location of Defendant's physical place of recreation and book and purchase axe throwing and rage room activities at the physical location, and submit an electronic contact form to get in contact with and be contacted by the physical place of recreation ,the Website has a nexus to, and is an extension of and gateway to, the services, privileges, and advantages of Defendant's physical place of recreation, which is a place of public accommodation under the ADA. As an extension of and

service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar location and business. Furthermore, the Website is a necessary service and privilege of Defendant's physical place of recreation in that, as a critical point of sale and booking reservations for the physical place of recreation,, it enables users of the Website to make online purchases and reservations for Defendant's axe throwing and rage room activities that are also available for purchase and reservation in, from and through the physical location.

15. Because the public can view, purchase, and reserve Defendant's axe throwing and rage room activities through the Website, thus having the Website act as a critical point of sale and booking reservations for Defendant's axe throwing and rage room activities that are sold and available for booking reservations in, from, and through the physical place of recreation, and submit an electronic contact form to get in contact with and be contacted by the physical place of recreation, the Website is an extension of, and gateway to the physical place of recreation, which is a place of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(L). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar place of recreation that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the services, privileges, and advantages afforded the non-visually disabled public both online and in the physical place of recreation.

16. At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's

5

brick-and-mortar place of recreation that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical place of recreation. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

17. Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendant's physical place of recreation located at 3262 Vineland Road, Suite 107, Kissimmee, Florida, and to check axe throwing and rage room activity hours, check axe throwing and rage room activity pricing, and submit an electronic contact form to get in contact with and be contacted by the physical place of recreation. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been updated to interact properly with screen reader software.

18. The opportunity to shop, pre-shop, and book for reservation Defendant's axe throwing and rage room activities, and submit an electronic contact form to get in contact with and be contacted by the physical place of recreation online from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

19. Like many consumers, Plaintiff accesses a number of websites at a time to help plan his place of recreational outings and to compare recreational activities, prices, services, sales,

discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

20. Beginning in February 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the axe throwing and rage room activities and online offers to educate himself as to the axe throwing and rage room activities, sales, services, discounts, and promotions being offered, learn about the brick-and-mortar location, check axe throwing activity hours, and check activity pricing with the intent to make a purchase and reservation through the Website or in, from, and through the physical place of recreation. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

21. Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a. Improperly labeled text throughout the Website; the cursor skipped the information and navigated to the nearest accessible link, button, or header.

b. When placing a reservation, inaccessible options such as the number of people to attend as well as the dates and times.

c. Mislabeled social media links located in the upper right-hand corner of the main page; they were mislabeled as "links"; and

d. A logo found on the Website, which functions as a link to return to the homepage, that was mislabeled as "link"; no further description or explanation of the logo was provided.

7

22. Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties accessing, navigating, and communicating with, the Website. However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website.

23. The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same booking and shopping experience, with the same access to the axe throwing and rage room activities, sales, services, and discounts, as provided at the Website and in the physical place of recreation as the non-visually disabled public.

24. Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's physical place of recreation and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant due to his blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

25. Because of the nexus between Defendant's physical place of recreation and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical place of recreation for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements

of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical place of recreation, which is a place of public accommodation subject to the requirements of the ADA.

26. On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

27. On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

28. On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

29. On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

30. On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31. On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

32. On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

33. Defendant has not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

34. Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

35. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

36. Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of booking and purchasing Defendant's axe throwing and rage room activities offered on the Website and in the physical place of recreation from their homes.

37. Defendant thus has not provided full and equal access to, and enjoyment of, the services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical place of recreation in contravention of the ADA.

38. Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

39. The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

40. Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

41. Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

42. The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

43. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

44. Notice to Defendant is not required because of Defendant's failure to cure the violations.

45. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

46. Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

47. Plaintiff re-alleges paragraphs 1 through 46 as if set forth fully herein.

48. Pursuant to 42 U.S.C. §12181(7) (L), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

49. Pursuant to 42 U.S.C. §12181(7) (L), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's physical place of recreation, book and pay for axe throwing and rage room activities online, and submit an electronic contact form to get in contact with and be contacted by the physical place of recreation. The Website thus is an extension of, gateway to, and intangible service, privilege, and

advantage of Defendant's physical place of recreation. Further, the Website serves to augment Defendant's physical place of recreation by providing the public information about the place of recreation and by educating the public as to Defendant's available axe throwing and rage room activities sold and offered for booking through the Website and in, from, and through the physical place of recreation.

50. Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

51. Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

52. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

53. Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

54. Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the information and services that Defendant has made available to the public on the Website and in the physical place of recreation in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

55. The Website was subsequently visited by Plaintiff's expert in March 2024 and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant has made insufficient material changes or improvements to the Website to enable its full and equal use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website a useful and effective "accessibility" notice, statement, or policy to provide blind and visually disabled persons such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a useful and effective "accessibility" notice, policy, or statement and the numerous access barriers as alleged herein and as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "A" and the contents of which are incorporated herein by reference, continue to render the Website not fully and equally accessible to users who are blind and visually disabled, including Plaintiff.

56. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

57. Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

58. There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

59. Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

60. The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

61. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

62. According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

63. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

64. As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

65. As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar location, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical place of recreation.

66. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

67. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the

Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the services, facilities, privileges, advantages, and accommodations of the physical place of recreation through the Website.

      b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

      c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical place of recreation and becoming informed of, booking, and purchasing Defendant's axe throwing and rage room activities, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such services made available to the general public through the Website and in the physical place of recreation.

      68.    Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

      WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

      A.  A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

---

[1]  or similar.

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L. Such other and further relief as the Court deems just and equitable.

DATED: March 28, 2024.

| | |
|---|---|
| **RODERICK V. HANNAH, ESQ., P.A.** | **LAW OFFICE OF PELAYO DURAN, P.A.** |
| Lead Counsel for Plaintiff | Co-Counsel for Plaintiff |
| 4800 N. Hiatus Road | 4640 N.W. 7th Street |
| Sunrise, FL 33351 | Miami, FL 33126-2309 |
| T. 954/362-3800 | T. 305/266-9780 |
| 954/362-3779 (Facsimile) | 305/269-8311 (Facsimile) |
| Email: rhannah@rhannahlaw.com | Email: duranandassociates@gmail.com |
| | |
| By: *s/ Roderick V. Hannah* | By: *s/ Pelayo M. Duran* |
| RODERICK V. HANNAH | PELAYO M. DURAN |
| Fla. Bar No. 435384 | Fla. Bar No. 0146595 |